IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR. NO. 2:26-cr-036-RAH-SMD |
| | ) | |
| RICHARD JAMIE HEWETT | ) | |

**BRIEF OF THE UNITED STATES**

The Court asked the parties to brief and provide citations for several different issues on the law of 18 U.S.C. § 875 as well as the law of variance. As for § 875, the Court asked the government to brief and provide citations for: what are its elements, what constitutes a true threat, to whom the true threat must be made, when must the communication be made, may there be more than one communication, can true threats be made conditionally, and can true threats be made via intermediaries.

The Court also asked the parties to brief the law of variance to determine whether the date, the County, or the language about the threat being communicated "to" the Victim constitute a variance from the proof at trial.

## I. Background

At issue is the sufficiency of the indictment after the government's evidence at trial was presented. In the indictment, the government charge the defendant "[o]n or about October 29. 2015. in Montgomery County, within the Middle District of Alabama" with "knowingly and willfully transmit[ing] in interstate and foreign commerce from outside the State of Alabama, to the State of Alabama, a telephonic communication to K.P. … and the communication contained a threat to injure K.P." Doc. 1.

At trial, K.P. testified. K.P. is a safety investigator with the Federal Motor Carrier Safety Administration, who was auditing the defendant's trucking company. As relevant here, he testified that though his office was in the Wynlakes area (which is within Montgomery County), but he worked from his remote office in Clanton Alabama on October 29, 2025. (Both locations are within the Middle District of Alabama but only one is within Montgomery County itself.) He also testified that just prior to the site visit, he was contacted by Randy Watson about threats the defendant had made to Watson against K.P. He testified that Watson had told him Hewett had threatened to "choke this young punk down" (i.e. to choke K.P.). This caused K.P. to take a state trooper with him on the site visit to Hewett's trucking company's listed address on October 28, 2025, out of fear for his safety.

He also testified that Hewett called him on October 29th, when he was in Clanton, AL, with a hostile tone, and indirectly threatened him by saying, among other things, he was messing with the wrong person, he's going to have my job, K.P. would be unemployed, that he is "a fucking snake in the grass" and a "fucking piece of shit." Directly after the call, he was contacted again by Watson who states that Hewett had said Hewett would "knock my [K.P.'s] ass out if he ever met me." During cross, K.P. stated that Hewett had not directly (i.e. to K.P. directly) threatened him with injury.

Randy Watson also testified. He testified that he started working as a safety consultant regarding the audit of Hewett's company in June 2025. Watson testified that Hewett repeatedly threatened K.P. with violence in his conversations with Watson and the threats escalated as the October 28, 2025 date approached. Finally, Watson testified that shortly before the site visit, Hewett told Watson that if K.P. comes out here two things are going to happen, he's going to be

in the hospital and I'm [i.e. Hewett] probably going to be in jail. Hewett then related these threats to K.P.

## II. The Law of Threats

### a. Elements of 875

The elements of this statute are, if modified appropriately to account for a recent Supreme Court ruling, well set forth in the Eleventh Circuit Pattern jury instructions.

(1) the Defendant knowingly sent a message in interstate [foreign] commerce containing a true threat to [kidnap any person] injure the person of another; and

(2) the Defendant sent the message with the intent to communicate a true threat or with the knowledge that it would be viewed as a true threat.

Based on the discussion yesterday during the attorney conference, the United States believes that the parties and the Court are in agreement that the jury must be instructed that the intent in the second element also includes recklessness. *See Counterman v. Colorado*, 600 U.S. 66, 82, 143 S. Ct. 2106, 216 L. Ed. 2d 775 (2023) (holding that recklessness is the appropriate mens rea for "true threat" cases).

### b. True threats:

- **Definition**:

The Supreme Court defined the term "true threat" as "statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *Virginia v. Black*, 538 U.S. 343, 359 (2003) (holding that State may ban cross burnings carried out with the intent to intimidate).

"The 'true' in that term distinguishes what is at issue from jests, "hyperbole," or other statements that when taken in context do not convey a real possibility that violence will follow." *Counterman v. Colorado*, 600 U.S. 66, 74 (2023). "Whether the speaker is aware of, and intends to convey, the threatening aspect of the message is not part of what makes a statement a threat, as this Court recently explained. … The existence of a threat depends not on 'the mental state of the author,' but on 'what the statement conveys' to the person on the other end." *Id.* (citing *Elonis v. United States*, 575 U.S. 723, 733 (2015).[1]

Courts have held that inability or lack of intent to *carry out* the threat (as opposed to the mens rea required when *making* the threat) do not prevent a statement from being a true threat. *Virginia v. Black*, 538 U.S. 343, 359-60 ("The speaker need not actually intend to carry out the threat.").

Several factors can help determine if a statement is a true threat, including the reaction of the listener and the entire context of the threat. Courts have also considered whether a threat can be made conditionally and whether it may be made through intermediaries.

- **Context of multiple conversations and reaction of listener**

The entire context of the statements may be used, across multiple conversations, to establish a statement as a true threat. Even statements that do not constitute a threat in isolation, may be found to be true threats in context. For instance, in *United States v. Alaboud*, the Eleventh Circuit held that "while one of Alaboud's statements, taken in isolation, may not rise to the level of a threat within the meaning of § 875(c), that was not the case here. The fact-finder must look at the context in which the communication was made to determine if the communication would cause

[1] Whether a statement is a "true threat" is distinct from what level of mens rea is additionally required to be proven. *See Counterman*, 600 U.S. 66 (holding both that true threats did not depend on the mental state of the author, and that a mens rea of recklessness must also be proven).

a reasonable person to construe it as a serious intention to inflict bodily harm" 347 F.3d 1293, 1297 (11th Cir. 2003). The Eleventh Circuit there rejected the defendant's arguments that his statements, while offensive, were not "threats" under § 875(c) but were more akin to the "fire and brimstone prophecies" of some television evangelists, and no reasonable person could have interpreted them otherwise. *Id.* at 1297. The Court rejected this argument because a reasonable person could have construed the statements as a serious intention to inflict bodily harm, since, the recipient took the statements as threats, the statements entailed graphic promises of violence, the defendant's tone of voice, and the number of calls. *Id.* at 1297-98. *See, e.g.*, *Heller v. Bedford Cent. Sch. Dist.*, 665 F. App'x 49, 52 (2d Cir. 2016) ("Context is crucial to identification of a true threat.")

Courts have heavily relied on the reaction of the listener. *See, e.g.*, *United States v. Alaboud*, 347 F.3d 1293, 1298 (11th Cir. 2003) (holding that recipient's belief that statements are a threat is relevant in the inquiry of whether a reasonable person would perceive them as a threat), overruled on other grounds by *United States v. Martinez*, 800 F.3d 1293 (11th Cir. 2015). Similarly, the Tenth Circuit has held that "in distinguishing between 'true threats' and protected speech, this court asks 'whether those who hear or read the threat reasonably consider that an actual threat has been made.'" *United States v. Wheeler*, 776 F.3d 736, 743 (10th Cir. 2015) (citation omitted). Though it was not dispositive, the Tenth Circuit found the reaction of the recipients the reaction of the recipients (arming themselves, contacting the police, warning others) to be probative of whether the threats were "true threats." *United States v. Wheeler*, 776 F.3d 736, 745-46 (10th Cir. 2015).

- **Conditional threats**

A true threat is no less a threat *merely* because it is conditional. "Your money or your life" is both conditionally and a paradigmatic threat. Indeed, as explained by the Seventh Circuit, "[m]ost threats are conditional; they are designed to accomplish something; the threatener hopes that they will accomplish it, so that he won't have to carry out the threats. They are threats nonetheless." *United States v. Schneider*, 910 F.2d 1569, 1570 (7th Cir. 1990) (internal citations omitted). The Eleventh Circuit has upheld the conviction under 18 U.S.C. § 871(a) (threats against the president) that was made conditionally on Obama's re-election. *United States v. Castillo*, 564 F. App'x 500, 504 (11th Cir. 2014) (upholding the defendant's conviction because although the carrying out of the threat was conditional, "the threat itself was not conditional," the alleged condition had been met before he made the threat, and the defendant need not actually intend to make a threat or carry it out). *See also*, *United States v. Dillard*, 795 F.3d 1191, 1199 (10th Cir. 2015*)* ("[O]ur cases make clear that a statement may constitute a true threat even if it is conditional."); *United States v. Patrick*, 117 F.3d 375, 377 (8th Cir. 1997) (holding that the fact that the "threat" was conditioned upon the defendant's release from prison—a condition he did not believe would come about—was not a valid defense); *United States v. Bellrichard*, 994 F.2d 1318, 1322 (8th Cir. 1993) ("A threat may be considered a 'true threat' even if it is premised on a contingency."); *United States v. Cox*, 957 F.2d 264, 266 (6th Cir. 1992) (holding that a conditional threat can be found to be a true threat if it "had a reasonable tendency to create apprehension that its originator will act in accordance with its tenor"); *United States v. Hoffman*, 806 F.2d 703, 711 (7th Cir. 1986) (holding in the context of § 871 that a "logical reading of the cases construing sec. 871 clearly establishes that the conditional nature of a statement does not make the statement any less of a 'true threat' simply because a contingency may be involved."). Nevertheless, where a

threat is so dependent on contingencies which may never occur, this may take the statement out of the true threat realm. *See, e.g.*, *Watts v. United States*, 394 U.S. 705, 707 (1969) (declining to find a statement to be a true threat where "in context, and regarding the expressly conditional nature of the statement and the reaction of the listeners," the threat to kill the President was not a true threat).

- **Threats not made directly to the intended recipient**

Courts have also considered if the threat must be made directly to the intended recipient. Several recent courts, including the Eleventh Circuit, have held that threats need not be communicated directly to the intended party, but can be communicated to a third party, or even a mass audience. *United States v. Pinkston*, 338 F. App'x 801 (11th Cir. 2009) (holding, in the context of a threat against the president under 18 U.S.C. § 871, that a homeless man's statements to hospital personal that he intended to kill the president was a true threat because facts were made under circumstances where "a reasonable person would construe it as a serious expression of an intention to inflict bodily harm").

Similarly, the Fifth Circuit has held: "The language of § 875(c) does not require that the threat be made directly to the intended target; it simply prohibits "any threat to injure the person of another" made in interstate commerce. Moreover, as we have pointed out, our precedent … does not require that the threat be made directly to the victim." *United States v. Morales*, 272 F.3d 284, 288 (5th Cir. 2001) (rejecting defendant's arguments that his statements could not, as a matter of law, constitute a true threat because they were made to a random third party in a direct message on an internet chatroom who had no connection with the high school students he was threatening)). Other circuits also hold this. *See, e.g.*, *United States v. Vartanian*, 245 F.3d 609, 615 (6th Cir. 2001) ("The fact that a threat or act of intimidation was not addressed directly to the protected individual does not mean that those words or conduct cannot or will not have the effect desired by

the defendant."); *Planned Parenthood of Columbia/Willamette, Inc. v. American Coalition of Life Activists*, 290 F.3d 1058, 1086 (9th Cir. 2002) (finding true threats on "guilty" posters which had been "publicly distributed, but personally targeted"); *United States v. Myers*, 104 F.3d 76, 77-78 (5th Cir. 1997) (finding that threats made by defendant against the Veterans Administration and Congress during a telephone call to an employee of the Paralyzed Veterans of America were true threats); *United States v. Kelner*, 534 F.2d 1020, 1023 (2d Cir. 1976) (holding statement was a threat despite the fact that it was made to the media during a press conference). Indeed, in this case, even the transmission in interstate commerce was by an intermediary. *Id.*

## III. The Law of Variance

### a. Standard

In *United States v. Lander*, 668 F.3d 1289, 1295 (11th Cir. 2012), The Eleventh Circuit stated:

> "The standard of review for whether there is a material variance between the allegations in the indictment and the facts established at trial is twofold: First, whether a material variance did occur, and, second, whether the defendant suffered substantial prejudice as a result." *United States v. Chastain,* 198 F.3d 1338, 1349 (11th Cir.1999) (citing *United States v. Prince,* 883 F.2d 953, 959 (11th Cir.1989)). We have called an allegation of a variance in essence "one form of challenge to the sufficiency of the evidence." *United States v. Jenkins,* 779 F.2d 606, 616 (11th Cir.1986). "A 'variance' occurs when the evidence at trial establishes facts materially different from those alleged in the indictment." *United States v. Caporale,* 806 F.2d 1487, 1499 (11th Cir.1986) (citing *United States v. Johnson,* 713 F.2d 633, 643 n. 9 (11th Cir.1983)). To find substantial prejudice, we have ordinarily considered whether "the proof at trial differed so greatly from the charges that appellant was unfairly surprised and was unable to prepare an adequate defense." *United States v. Calderon,* 127 F.3d 1314, 1328 (11th Cir.1997) (citations omitted).

*United States v. Lander*, 668 F.3d 1289, 1295 (11th Cir. 2012).

"[T]he proper distinction between an amendment and a variance is that an amendment occurs when the essential elements of the offense contained in the indictment are altered to broaden the possible bases for conviction beyond what is contained in the indictment." *United States v.*

*Keller*, 916 F.2d 628, 634 (11th Cir. 1990). "A variance occurs when the facts proved at trial deviate from the facts contained in the indictment but the essential elements of the offense are the same." *Id*. Variance in the evidence may be permitted as long as the evidence actually presented (and subsequent arguments and jury instructions) relate to and prove the crime charged in the indictment, notwithstanding the manner in which the evidence may have been described in the indictment. *See United States v. Patino*, 962 F.2d 263, 265-66 (2d Cir. 1991) (prosecution argued guns not mentioned in the indictment; defendant "had sufficient notice of the core criminal conduct for which he was charged").

Variance is not prejudicial in all cases and the prejudice will not be assumed. *United States v. Champion*, 813 F.2d 1154, 1168 (11th Cir. 1987). "Prejudice occurs where the proof at trial differed so greatly from the charges in the indictment that the defendant was unfairly surprised and had an inadequate opportunity to prepare a defense." *United States v. Williams*, 785 F. App'x 692, 700 (11th Cir. 2019) (citation omitted). "Where a deviation from the indictment does not result in prejudice, we do not have to consider materiality." *Id.*

"A variance between the dates alleged and dates proved at trial will not generally warrant dismissal of the indictment provided the date proved falls within the statue of limitations and before the date of the indictment." *United States v. Young*, 39 F.3d 1561 (11th Cir. 1994). Where an indictment charges "on or about" a specific date, "[p]roof of a date reasonably near the specified date is sufficient." *United States v. Reed*, 887 F.2d 1398, 1403 (11th Cir. 1989). "It is well-settled that 'proof of a date reasonably near to the specified date is sufficient' when an indictment charges an offense using the designation 'on or about.'" *United States v. Sweat*, 626 F. App'x 809, 813 (11th Cir. 2015)

A variance between counties within a district is not necessarily a fatal variance. For instance, the Seventh Circuit has held that "Even if the mistake in the county specification constitutes a variance—a slight one, at best—it is immaterial. The county identification was not a necessary part of the charging language of the indictment, given that the indictment satisfied the jurisdictional element by stating that the offense took place in the Western District of Michigan." *United States v. Brown*, 287 F. App'x 515, 516 (6th Cir. 2008). So too the Eleventh Circuit. In a case involving an indictment that mentioned Dade County, Florida, but in which the proof at trial indicated the offense took place near Lake Okeechobee, the Eleventh Circuit held that the defendant was not prejudiced because "An indictment that specified the place of the offense as the Southern District of Florida would have sufficiently informed Slusser of the place of his alleged offense." *Champion*, 813 F.2d at 1168. *See also*, *United States v. Harrell*, 737 F.2d 971, 975 n.4 (11th Cir. 1984) (charge that offense occurred within specified district is adequate); *United States v. Lewis*, 2019 WL 7503156, at *21 (N.D. Ga. Oct. 1, 2019), *report and recommendation adopted*, 2019 WL 6907509 (N.D. Ga. Dec. 19, 2019), aff'd, 40 F.4th 1229 (11th Cir. 2022) ("[I]t is well settled that an indictment adequately advises a defendant of the location or place of the offense if it specifies the district in which the offense occurs.").

**b. Argument**

The change from communications "to K.P." to communications made "about K.P." relates to and proves the crime charged in the indictment: namely, that the defendant made threated K.P and communicated those threats in interstate commerce. It does not change an essential element. Here, the facts proved at trial deviate from the facts in the indictment, but the essential elements are the same.

The defense was on notice, not only through discovery, which was provided at arraignment in March of this year, but also by the arguments presented at the detention hearing, that the government's case revolved around the threats made *about* the victim *to* Randy Watson. At the detention hearing, the government introduced evidence showing the aggressive statements made directly to K.P. and the threats about K.P. that were told to Watson. (See Detention Hearing Transcript.) Even if there is a material variance here, the defense was not substantially prejudiced, as there has been no unfair surprise or inadequate opportunity to prepare a defense.

Respectfully submitted this 21st day of September, 2026.

THOMAS GOVAN
UNITED STATES ATTORNEY

/s/ Joel Feil
Joel Feil
Assistant United States Attorney
131 Clayton Street
Montgomery, AL 36104
Phone: (334) 223-7280
Fax: (334) 223-7135
E-mail: Joel.Feil4@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 2:26-CR-00036-RAH-SMD |
| | ) | |
| RICHARD JAMIE HEWETT | ) | |

**CERTIFICATE OF SERVICE**

I hereby certify on September 21, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel on record.

Respectfully submitted,

/s/ Joel Feil
Joel Feil
Assistant United States Attorney
131 Clayton Street
Montgomery, AL 36104
Phone: (334) 223-7280
Fax: (334) 223-7135
E-mail: Joel.Feil4@usdoj.gov